# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| **ANGELICA SMITH,**  *Plaintiff,*  v.  **SECURITY CREDIT SERVICES, LLC,**  *Defendant.* | Case Number: 8:23-cv-1228-MSS-CPT  **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, **Angelica Smith** ("**Ms. Smith**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, **Security Credit Services, LLC** ("**SCS**"), stating as follows:

### PRELIMINARY STATEMENT

1. This is an action brought by Ms. Smith against the Defendant for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("**FCCPA**"), and the Florida *Civil Remedies for Criminal Practices Act*, § 772.101, Fla. Stat., *et seq.* ("**CRCPA**").

## JURISDICTION AND VENUE

2. Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCCPA, § 559.77(1), Fla. Stat., the CRCPA, § 772.104, Fla. Stat., and 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction for Ms. Smith's state law claims pursuant to 28 U.S.C. § 1367.

4. The Defendant is subject to the provisions of the FDCPA, the FCCPA, and the CRCPA, and is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

5. Venue is proper in the Middle District of Florida, pursuant to 28 U.S.C. § 1391(b)(2), because the acts complained of were committed and / or caused by the Defendants within this District.

## PARTIES

### Ms. Smith

6. **Ms. Smith** is a natural person residing in the City of Tampa, Hillsborough County, Florida.

7. Ms. Smith is a *Consumer* as defined by the FDCPA and the FCCPA, 15 U.S.C. § 1692a(3), and § 559.55(8), Fla. Stat., respectively.

### SCS

8. **SCS** is a Mississippi limited liability company with a principal business address of **306 Enterprise Dr., Oxford, MS 38655**.

9. SCS is registered to do business in the State of Florida, where its Registered Agent is **Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.**

## DEFENDANT IS A DEBT COLLECTOR

10. The Defendant is a *Debt Collector* within the meaning of the FDCPA and the FCCPA, 15 U.S.C. § 1692a(6) and § 559.55(7), Fla. Stat., respectively, in that it uses an instrumentality of commerce, including postal mail and telephone services, both interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and/or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11. SCS has registered with the Florida Office of Financial Regulation as a *Consumer Collection Agency* ("**CCA**"), holding license number **CCA9902463.**

12. As a licensed CCA, the Defendant knew or should have known its obligations under the FDCPA and the FCCPA.

## FACTUAL ALLEGATIONS

### Tempoe Makes Usurious, Unlawful Loan to Ms. Smith

13. On or about August 2, 2021, Ms. Smith visited a jewelry retailer based in Florida to purchase a watch and a diamond ring for personal use.

14. Ms. Smith then expressed interest in purchasing a particular watch and diamond ring from the retailer.

15. The jewelry retailer suggested Ms. Smith finance her purchase through Tempoe, LLC ("**Tempoe**").

16. The retailer's salesperson described Tempoe's financing as a loan several times to Ms. Smith (the "**Loan**").

17. The balance on the Loan arose from the purchase of personal jewelry for Ms. Smith and thus meets the definitions of *Debt* under the FDCPA and the FCCPA, 15 U.S.C. § 1692a(5) and § 559.55(6), Fla. Stat., respectively.

18. The retailer provided the application, obtained the credit approval from Tempoe, and facilitated the completion of the transaction.

19. Tempoe then immediately advanced the cash price of the jewelry, minus any discount fees it may have received, to the Florida retailer.

20. Thus, Tempoe provided an "advance of money" to the retailer, since it paid the retailer in full for jewelry the Florida retailer owned, so that the retailer would deliver the jewelry to Ms. Smith.

21. From the perspective of the retailer, there is virtually no difference between how it gets paid from Tempoe and how it gets paid from Visa or Mastercard – pending credit approval, the authorized amount is wired to its bank account.

22. While falsely labeled as a "consumer lease agreement," the financing agreement made by Tempoe to Ms. Smith was a loan.

23. While Tempoe did not disclose what the annual percentage rate of interest was, simple math reveals the effective annual interest rate exceeded 125%.

24. Florida's general usury statute, § 687.071, Fla. Stat., renders loans made with annual interest rates greater than 45% a third-degree felony and caps interest rates at 18%.

25. Florida does permit interest rates of up to 30% with the requisite license.

26. Florida law renders any loan made in excess of 25% interest, without the requisite license "void as against the public policy of the state as established by its Legislature." *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935).

27. No license permits extensions of credit to be made at interest rates exceeding 125%.

28. Because the Loan made to Ms. Smith charged interest that exceeded 125%, the usurious agreement was thus void.

29. The Loan therefore meets the definition of an *Unlawful Debt* pursuant to § 772.102(2)(a)(3), Fla. Stat.

30. In its contract with Ms. Smith, Tempoe utilized the term "consumer lease agreement" rather than "loan" primarily to attempt to evade Florida's usury laws which restrict the annual interest rate a financing company like Tempoe can lawfully charge.

31. Moreover, a review of both the substance and circumstance of the Loan clearly show that the agreement was a loan agreement, not a rental or lease.

32. The "lease" agreement allows for Ms. Smith to obtain ownership of the jewelry by making a final payment to Tempoe, which is calculated by taking the $1,170 purchase price, dividing it by 240, multiplying that amount by the number of payments made, subtracting that amount from the $1,170 purchase price, and then multiplying that number by 0.6. **SEE PLAINTIFF'S EXHIBIT A.**

33. Thus, after 56 months of payments, the Tempoe agreement either automatically confers ownership of the "leased" items to Ms. Smith or allows her to purchase the items for $0.

34. Likewise, after 24 months of payments, the Tempoe agreement allows Ms. Smith to purchase the designer watch and diamond ring, with a retail value of $1,170, for only $397.49, a significant amount less than fair market value.

35. Because Ms. Smith could become the owner of the watch and diamond ring for only nominal consideration (or even no additional consideration), the agreement constituted a credit sale agreement. See, e.g., *Taylor v. Timepayment Corp.*, Civil Action No. 3:18cv378 (E.D. Va. Mar. 31, 2019

36. Despite Tempoe's effort to characterize the Loan as a rental or lease, the Loan is recognized legally as an extension of "credit" as defined by Regulation Z, 12 C.F.R. § 1026.2(a)(14), which defines "credit" as "the right to defer payment of debt or to incur debt and defer its payment."

37. The jewelry retailer owned the watch and diamond ring when Ms. Smith entered the store; the retailer suggested Ms. Smith finance the purchase via Tempoe so that the retailer could secure payment for the jewelry it owned and Tempoe, in turn, would collect payments from Ms. Smith.

38. Courts examining nearly identical facts have determined this can in and of itself constitute a loan. See, e.g., *May v. U.S. Leasing Corp.,* 239 So.2d 73 (Fla. 4th DCA 1970) ("Since it is the admitted fact that the furniture had been sold to (retailer) and that after the sale, a lease was executed at the suggestion of the seller to finance the sale, the court should have ignored the parol evidence rule and looked to the intent of the parties to see if the purpose of the entire transaction was to secure the payment of money.")

39. Tempoe is not a retailer and its revenue derives only from financing consumer transactions for third-party merchants.

40. Tempoe is a financing company that makes a profit by offering loans to credit-challenged consumers who, overwhelmingly, cannot qualify for traditional credit.

41. Tempoe makes loans primarily through hundreds of retail "partners;" Tempoe's marketing pitches to potential new retail partners emphasize that Tempoe views its products as ***loans***.

42. Despite claiming the existence of a lease on paper, Tempoe never even attempted to perfect its security interest in the items by making any UCC or similar filing with the State of Florida.

43. Indeed, Tempoe failed to obtain a description of what it supposedly had a security interest in, noting it was a "[ITEM] buluva (SIC) watch" and "diamond ring." **SEE PLAINTIFF'S EXHIBIT A.**

44. The watch was manufactured by *Bulova*; according to the manufacturer's website, Bulova has more than 300 different models of watches.

45. The brand of the jewelry is listed as "gold," with the additional information noting that either the watch or the ring is "gold." *Id.*

46. The cut of the diamond, the carats of the gold, or anything that could reasonably identify what Tempoe ostensibly had a security interest in is noticeably absent.

47. On information and belief, Tempoe had no intention of retaking possession of the jewelry and, for all intents and purposes, treats its "lease" agreements as unsecured consumer loans.

48. In the event of late payment or default by a consumer, Tempoe relies upon aggressive collection efforts, adverse credit reporting, and, failing that, the sale of the charged-off receivable to third-party debt collectors like SCS.

49. Indeed, SCS itself believes that Tempoe's leases are loans, as on many occasions, SCS sued consumers as a successor-in-interest to Tempoe debts and specifically referred to Tempoe agreements as "loans."

50. For example, in a July 2021 filing in Polk County, Florida, SCS stated a consumer-defendant "entered into a Loan Agreement" with Tempoe, and "Defendant was given a Loan which funds were accepted." See *Security Credit Services, LLC vs. Jonathan Marshall,* Polk County, Florida, case 2021SC-006237-000000, July 30, 2021.

51. In other legal filings, SCS referred to Tempoe's contracts as "extensions of credit," using phrases like "Defendant entered into a Contract for the ***extension of credit*** bearing account number…" (emphasis added). See, e.g., *Security Credit Services, LLC Assignee of Tempoe LLC Sears HHO Inc 03538) vs. Felipe Hernandez*, Hale County, Texas, Case A42392-1810, October 29, 2018.

52. In other lawsuits filed by SCS for similar "consumer lease" balances to which SCS claimed to be the successor-in-interest, it also utilized language clearly stating it viewed the balances as coming from a loan agreement.

53. For example, SCS sued multiple consumers concerning debts originally owed to Kornerstone Credit LLC ("Kornerstone"), an entity similar to Tempoe, which allows consumers to "lease" consumer goods; SCS stated in its Complaint against a Florida consumer that "Defendant entered into a ***Loan Agreement*** with Plaintiff or Plaintiff's predecessor in interest (Kornerstone) …

Pursuant to the agreement, the Defendant was given a *Loan* which funds were accepted without objection. The *Loan Agreement* is attached hereto as Exhibit "A" … Defendant failed to make the *installment payment* due on 09/09/2021, and all subsequent payments due, therefore, the Defendant is in default and obligated to Plaintiff in the amount $4,297.64." *Security Credit Services, LLC vs. Kawana Brown*, 502022-SC-019722-XXXXMB (Fla. 15th Cir. County Ct., November 17, 2022) (**emphasis added**).

54. In determining whether an agreement is usurious, the court may disregard the form of the agreement and consider the substance of the transaction. *Antonelli v. Neumann*, 537 So. 2d 1027, 1029 (Fla. Dist. Ct. App. 1988). *See also*, *e.g.*, *Growth Leasing, Ltd. v. Gulfview Advertiser, Inc.*, 448 So.2d 1224 (Fla. 2d DCA 1984); *Kay v. Amendola*, 129 So.2d 170 (Fla. 2d DCA 1961); *May*, 239 So.2d 73.

55. Further, Florida's "usury statutes show clear legislative intent to prevent accomplishment of a usurious scheme by indirection, and the concealment of the needle of usury in a haystack of subterfuge." *Pinchuck vs. Canzoneri*, 920 So. 2d 713, 715-16, (Fla. 4th DCA, 2006).

56. Since "the purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender … for purposes of usury calculations, courts will look beyond the form of a transaction to its substance." *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

## **Defendant Attempts to Collect Usurious Loan from Ms. Smith**

57. Sometime prior to November 2021, Ms. Smith allegedly became indebted to Tempoe in the amount of $549 (the "**Debt**").

58. Around November 2021, Tempoe sold the Debt to SCS.

59. When purchasing the Tempoe receivable, SCS was provided a copy of the Loan documents and thus was aware of the usurious nature of the alleged debt at all times.

60. SCS then took steps to collect the Debt from Ms. Smith.

61. Upon information and belief, SCS, pursuant to 15 U.S.C. § 1692g, thereafter mailed Ms. Smith collection letters, seeking to collect the Debt.

62. SCS also reported the Debt to *consumer credit reporting agencies* ("**CRAs**"), including Experian, certifying that it was a legally owed, legitimate debt. **SEE PLAINTIFF'S EXHIBIT B.**

63. Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g.*, *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

64. SCS' report regarding the Debt to Experian unfairly impacted Ms. Smith's credit scores, credit report, debt-to-income ratios, and similar.

65. SCS knew, or should have known, that it was collecting an unlawful debt from Ms. Smith.

66. The $549 balance owed was 47% of the $1,170 price of the jewelry.

67. Had SCS or Tempoe truly considered the Tempoe loan to be a lease, then Tempoe would have alleged the full $1,170 cash price of the jewelry, plus any unpaid rental payments, was owed by Ms. Smith.

68. Instead, SCS and Tempoe alleged only $549 was owed, despite the fact that Ms. Smith never exercised any option to purchase or made any payments beyond the "rental" payments.

69. The fact that SCS and Tempoe alleged only $549 was owed by Ms. Smith further evidences that both parties considered the agreement to be a *loan*, since it applied Ms. Smith's rental payments as payments against the loan balance.

70. The $549 would not reasonably be explained by wear-and-tear or depreciation since the items were a diamond ring and an artisanal watch, which hold their value, and in many cases, actually increase in value over time.

71. SCS purchases a large amount of unlawful debt from lenders, including Tempoe, at a tiny fraction of face value, and then attempts to collect the full value of those debts from consumers like Ms. Smith.

72. Beyond this, SCS was in possession of the original loan agreement documents creating the Debt.

73. Ms. Smith suffered severe emotional distress in being subjected to illegal collection actions by the Defendant over an unlawful debt which she, pursuant to Florida law, does not owe.

74. The above-described collection conduct by the Defendant in its efforts to collect this alleged Debt from Ms. Smith were deceptive, misleading, and illegal communications in an attempt to collect this alleged Debt, all done in violation of numerous and multiple provisions of the FDCPA.

75. These violations by the Defendant were knowing, willful, negligent and/or intentional, and the Defendant did not maintain procedures reasonably adapted to avoid any such violations.

76. Ms. Smith has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

### COUNT I
### VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e

77. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

78. The Defendant violated **15 U.S.C. § 1692e** when it used misleading and deceptive means to attempt to collect a debt by attempting to collect the Debt from Ms. Smith, a Florida resident, both in writing and via credit reporting, asserting that a debt from an unlicensed, non-bank entity, Tempoe, bearing

annual interest exceeding 25%, was a legal, valid, and enforceable debt, when the Debt was null, void, and unenforceable under Florida law.

79. The Defendant's conduct renders it liable for the above-stated violation of the FDCPA, and Ms. Smith is therefore entitled to statutory damages up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT II
### VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(10)

80. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

81. The Defendant violated **15 U.S.C. § 1692e(10)** when it used misleading and deceptive means to attempt to collect a debt by attempting to collect the Debt from Ms. Smith, a Florida resident, both in writing and via credit reporting, asserting that a debt from an unlicensed, non-bank entity, Tempoe, bearing annual interest exceeding 25%, was a legal, valid, and enforceable debt, when the Debt was null, void, and unenforceable under Florida law.

82. The Defendant's conduct renders it liable for the above-stated violation of the FDCPA, and Ms. Smith is therefore entitled to statutory damages up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT III
### VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(2)(a)

83. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

84. The Defendant violated **15 U.S.C. § 1692e(2)(a)** when it made a false representation about the character, amount and/or legal status of a debt by attempting to collect the Debt from Ms. Smith, a Florida resident, both in writing and via credit reporting, asserting that a debt from an unlicensed, non-bank entity, Tempoe, bearing annual interest exceeding 25%, was a legal, valid, and enforceable debt, when the Debt was null, void, and unenforceable under Florida law.

85. The Defendant's conduct renders it liable for the above-stated violation of the FDCPA, and Ms. Smith is therefore entitled to statutory damages up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT IV
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692e(8)

86. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

87. The Defendant violated **15 U.S.C. § 1692e(8)** when it communicated credit information which was false, and which the Defendant knew, or should have known was false, to wit, that the Debt from an unlicensed, non-bank entity, Tempoe, bearing an annual interest rate exceeding 25%, was a legal, valid, and enforceable debt, and that Ms. Smith thus actually owed the $549 balance, when she did not owe it, as the Debt was null, void and unenforceable against her pursuant to Florida law.

88. The Defendant's conduct renders it liable for the above-stated violation of the FDCPA, and Ms. Smith is therefore entitled to statutory damages up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT V
## VIOLATIONS OF THE FDCPA – 15 U.S.C. § 1692f(1)

89. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

90. The Defendant violated **15 U.S.C. § 1692f(1)** when it attempted to collect an amount not authorized by contract or law – to wit, the entire purported Debt – from Ms. Smith through written demands and credit reporting, when the Debt was null, void, and unenforceable under Florida law.

91. The Defendant's conduct renders it liable for the above-stated violation of the FDCPA, and Ms. Smith is therefore entitled to statutory damages up to $1,000.00, costs, and attorney's fees pursuant to 15 U.S.C. § 1692k.

## COUNT VI
## VIOLATIONS OF THE CRCPA – § 772.103(3), FLA. STAT.

92. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

93. The Defendant violated **§ 772.103(3), Fla. Stat.,** when it participated in an association with Tempoe, through the collection of an unlawful debt – the Debt.

94. SCS took action in furtherance of this conspiracy, including mailing collection letters and credit reporting.

95. The Defendant has attempted to collect virtually identical debts through credit reporting, phone calls, demand letters, and threats of litigation from hundreds, if not thousands, of other Florida residents.

96. The Defendant's conduct renders it liable for the above-stated violation of the CRCPA, and Ms. Smith is therefore entitled to threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, as well as costs, and attorney's fees pursuant to § 772.104, Fla. Stat.

## COUNT VII
## VIOLATIONS OF THE CRCPA – § 772.103(4), FLA. STAT.

97. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

98. The Defendant violated **§ 772.103(4), Fla. Stat.,** when it conspired and endeavored, with Tempoe, to collect an unlawful debt – the Debt – and to use any funds collected in furtherance of the ongoing enterprise.

99. The Defendant took action in furtherance of this conspiracy, including mailing collection letters and credit reporting.

100. The Defendant has attempted to collect virtually identical debts through credit reporting, phone calls, demand letters, and threats of litigation from hundreds, if not thousands, of other Florida residents.

101. The Defendant's conduct renders it liable, for the above-stated violation of the CRCPA, and Ms. Smith is therefore entitled to threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, as well as costs, and attorney's fees pursuant to § 772.104, Fla. Stat.

## COUNT VIII
### VIOLATIONS OF THE FCCPA – § 559.72(9), FLA. STAT.

102. Ms. Smith adopts and incorporates paragraphs 1 – 76 as if fully stated herein.

103. The Defendant violated **§ 559.72(9), Fla. Stat.**, when it attempted to collect the Debt from Ms. Smith via multiple collection letters mailed to her and credit reporting, when the Debt was illegitimate and unenforceable due to the application of interest rates in excess of 25% annually on the principal amount of the Debt, in violation of § 687.071, Fla. Stat., and the Defendant knew, or should have known, that the Debt was unenforceable in Florida.

104. The Defendant violated **§ 559.72(9), Fla. Stat.**, when it asserted rights which do not exist, specifically, the right to collect the Debt from Ms. Smith, when the Debt was not legally owed pursuant to Florida law.

105. The Defendant was in possession of the original loan documents and thus knew, or should have known, that the Debt contained an illegal interest rate in Florida.

106. The Defendant's conduct renders it liable for the above-stated violation of the FCCPA, and Ms. Smith is therefore entitled to actual damages, statutory damages of up to $1,000, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE,** Ms. Smith respectfully requests this Honorable Court enter judgment against SCS for:

a. Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b. Statutory damages of **$1,000.00**, pursuant to § 559.77(2), Fla. Stat.;

c. Threefold damages, or **$200**, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

d. Actual damages, including damages for loss of credit opportunities, damage to credit scores, and for emotional distress;

e. Injunctive relief prohibiting the Defendant from trying to collect the Debt from Ms. Smith utilizing any methods prohibited by law;

f. Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3), § 772.104(1), Fla. Stat., and § 559.77(2), Fla. Stat.; and,

g. Such other relief that this Court deems just and proper.

## JURY TRIAL DEMANDED

Ms. Smith hereby demands a jury trial on all issues so triable.

Respectfully submitted on **June 27, 2023**, by:

**SERAPH LEGAL, P.A.**

/s/ *Brandon D. Morgan*
Brandon D. Morgan, Esq.
Florida Bar Number: 1015954
BMorgan@SeraphLegal.com

/s/ *Thomas M. Bonan*
Thomas M. Bonan, Esq.
Florida Bar Number: 118103
TBonan@SeraphLegal.com

1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff*


**ATTACHED EXHIBIT LIST**
A    Plaintiff's Loan Agreement with Tempoe, August 2, 2021, Excerpt
B    Plaintiff's Experian Consumer Disclosure, April 19, 2023 – SCS Tradeline Excerpt